UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ROCCO J. D'ANDREA and HANNELORE D'ANDREA, | : | Hon. Joseph H. Rodriguez |
| *Plaintiffs*, | : : | |
| v. | : : | Civil No. 21-09569 |
| U.S. ARMY CORPS OF ENGINEERS, | : : | **OPINION** |
| *Defendant*. | : : : | |

Approximately two years after settling putative Clean Water Act violations with the Army Corps of Engineers (the "Corps"), Plaintiffs Rocco and Hannelore D'Andrea ("Plaintiffs") asked the Corps to reconsider certain findings and obligations in the settlement agreement and filed this lawsuit when the Corps refused. The Corps moved to dismiss the case, arguing that Plaintiffs lack standing and fail to allege a cognizable claim under the Administrative Procedures Act. The Court agrees that Plaintiffs lack standing and will grant the Corps' motion.

**I.   Background**

   **a.  Alleged Clean Water Act Violations and Settlement**

To explain the facts of this case, some legal background is necessary. The Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 et seq., makes it unlawful for any person to discharge pollutants into "waters of the United States" without a permit. 33 U.S.C. §§ 1311(a), 1362(7), (12), 1342(a), 1344. Waters subject to permit requirements include "territorial waters," "tributaries," and "adjacent wetlands." 33 C.F.R. § 328.3(a)(1), (2), (4). The CWA authorizes the Secretary of the Army through the Corps of Engineers to issue permits for discharges into waters that fall under the CWA's jurisdiction and to enforce permit violations. *See* 33 U.S.C. §

1

3144(a); *see also* E.P.A. *Federal Enforcement for the Section 404 Program of the Clean Water Act, MEMORANDUM, Between the Department of the Army and the Environmental Protection Agency (Jan. 1989)*, https://www.epa.gov/cwa-404/federal-enforcement-section-404-program-clean-water-act.  The Corps determines whether property contains "waters of the United States by issuing jurisdictional determinations on a case-by-case basis." *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 595 (2016).  Affected parties generally have sixty days to appeal a jurisdictional determination.  33 C.F.R. §§ 320.1(a)(6), 331.2, 331.6(a).

In 2002, Rocco purchased a 7.98-acre piece of land in Middle Township, New Jersey (the "Property") and transferred ownership of the Property to his wife Hannelore in 2004.  [Compl. ¶¶ 3-4; Dkt. 14 at 14].  In 2011, the Property began to attract attention from the New Jersey Department of Environmental Protection ("NJDEP").  NJDEP evaluated the Property and determined that violations of state environmental regulations occurred on approximately 2.9 acres of the Property due to unauthorized "clearing and filling" of "wetlands," "freshwater wetland transition areas," and "freshwater wetlands."  [*See* Dkt. 11-3 at 4–5].  NJDEP sent a first notice of violation to Plaintiffs concerning these violations on January 6, 2012.  [*See* Dkt. 11-3 at 5, State Order ¶ 3].  After Plaintiffs failed to remediate the violations, NJDEP sent a second notice of violation on June 6, 2014.  [*See* Dkt. 11-3 at 5, State Order ¶ 5].

Meanwhile, the Corps commenced its own investigation into the Property.  In 2014, the Corps inspected the Property and determined that, between 2011 and 2014, fill was discharged into approximately 2.9 acres of the Property.  In June 2014 the Corps determined that portions of the Property, including the Northern Portion, contain "wetlands" and, therefore, that the Corps had jurisdiction under the CWA.  [Compl. ¶ 14].  Because the fill was discharged without a permit, the Corps sent a cease-and-desist letter to Plaintiffs and later ordered Plaintiffs to remove

2

the fill. [Compl. ¶ 7]. Plaintiffs deny discharging fill into the wetlands portions of the Property. [Compl. ¶ 6].

In 2016, after concluding that Plaintiffs failed to resolve the outstanding CWA violations, the Corps referred the case to the United States Attorney's Office. The Corps also provided Plaintiffs with documents to appeal the Corp's jurisdictional determination. [Compl. ¶ 13]. Plaintiffs did not appeal this determination. [*Id.*].

During these investigations, it was discovered that a "substantial portion of the Property had been contaminated with Chlordane," a chemical used as an insecticide until it was banned in 1988. [Compl. ¶ 9]; *see also* E.P.A., *Chlordane Hazard Summary* (Jan. 2000), https://www.epa.gov/sites/default/files/2016-09/documents/chlordane.pdf. Plaintiffs maintain that they did not dump chlordane on the Property and suspect that an auto repair shop adjacent to the Property is responsible for the contamination. [Compl. ¶ 12].

To avoid potential civil and criminal penalties, and formalize a plan for remediating state and federal violations and restoring the Property, Plaintiffs settled with NJDEP and the Corps. [Compl. ¶ 14]. Plaintiffs first entered an administrative consent order with NJDEP (the "State Order") on or around October 12, 2016. [Compl. ¶ 14]. The State Order required Plaintiffs to remove "all unauthorized fill material" from the Property. [Dkt. 11-3 at 6, State Order ¶ 14.a]. It also required Plaintiffs to submit a restoration plan (the "Restoration Plan"), which NJDEP reviewed and approved on March 3, 2017. [Dkt. 11-3 at 13, March 3, 2017 Ltr. NJDEP to Steven Morey]. The State Order required Plaintiffs to complete the remediation and restoration within on year. [Dkt. 11-3 at 7, State Order ¶ 17].

Later, on July 18, 2017, Plaintiffs and the Corps entered a settlement agreement (the "Settlement Agreement"). The Settlement Agreement recites the Corp's determination that the

Property at issue contained wetlands over which the Corps has jurisdiction. [Dkt. 11-2 at 9, Settlement Agreement ¶ 3]. The Settlement Agreement provides that the Corps would grant Plaintiffs a permit to allow 0.06 acres of fill to remain in wetlands on the Property. [Dkt. 11-2 at 11, Settlement Agreement ¶¶ 13.a, 14]. Plaintiffs agreed to restore the remaining 2.8 acres of filled wetland as detailed in the Restoration Plan included in the State Order. [Dkt. 11-2 at 10–11, Settlement Agreement ¶ 8, 13].

To date, Plaintiffs have spent more than $400,000 "to comply with the [Settlement Agreement], largely dedicated to the clean-up of the chlordane contamination." [Compl. ¶ 23]. But Plaintiffs have not completed the remediation or restoration that the State Order or the Settlement Agreement require.

### b. The Lomax Report, this Lawsuit Commences

In 2019, approximately two years after entering the Settlement Agreement, Plaintiffs retained the Lomax Consulting Group, LLC as environmental consultants. [Compl. ¶ 20]. Joseph Lomax ("Lomax") analyzed the Property and produced a report (the "Lomax Report"). The Lomax Report concluded that the 2.8-acre portion that was the subject of the Settlement Agreement are "uplands" rather than wetlands. [Compl. ¶ 21]. Based on this conclusion, Plaintiffs came to believe that the Corps lacked jurisdiction over this 2.8-acre portion of the Property and, therefore, that the "single central fact upon which the [Corp's] enforcement efforts were based was incorrect." [Compl. ¶ 21]. Accordingly, Plaintiffs came to believe that the Settlement Agreement "was based upon a mutual mistake about the location of wetlands versus uplands." [Compl. ¶ 21].

Plaintiffs sent the Lomax Report to the Corps and asked the Corps to reconsider its claim to jurisdiction over portions of the Property. [*See* Compl. ¶ 22]. Plaintiffs also asked the Corps

to modify the Settlement Agreement based on the Lomax Report's conclusions and thereby reduce Plaintiffs' obligations to remediate the Property.  Plaintiffs claim that the Corps never gave the Lomax Report "more than a cursory review and have failed to adequately address the findings and conclusions contained therein." [Compl. ¶ 22].  Instead, the Corps "has insisted that [Plaintiffs] complete the terms of the [S]ettlement [A]greement…." [Compl. ¶ 25].

Dissatisfied with the Corps' response, Plaintiffs filed this lawsuit.  Count I of Plaintiffs' Complaint seeks "pre-enforcement review" under the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 et seq., of the Corps' alleged refusal to reconsider the Settlement Agreement based on the Lomax Report and to permit an administrative appeal of that refusal.  [Compl. ¶¶ 26, 28–30].  Count II seeks a declaration that the Settlement Agreement is "based upon a mutual mistake of fact," and that the "2.8 acre portion of the D'Andrea property [is] uplands and enjoining the enforcement of that agreement…." [Compl. ¶¶ 31–32].  The Corps filed the present motion to dismiss the lawsuit for lack of standing and for failure to state a claim.  [Dkt. 11].  The Court agrees that Plaintiffs lack standing and therefore declines to consider the Corps' arguments concerning Plaintiffs' failure to state a claim.

## II.   Legal Standard

"Article III of the Constitution limits the scope of the Federal judicial power to the adjudication of 'cases' or 'controversies.'" *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 244 (3d Cir. 2012) (quoting U.S. Const., art. III, § 2). "The courts have developed several justic[i]ability doctrines to enforce the case-or-controversy requirement, and 'perhaps the most important of these doctrines' is the requirement that 'a litigant have standing to invoke the power of a federal court.'" *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)).

> To establish constitutional standing, "a plaintiff must show (1) [he] has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). Plaintiffs bear the burden to satisfy the Court that they have standing to bring their claim. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

Parties raising a standing challenge may move to dismiss a case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Schiavo v. Carney*, 548 F. Supp. 3d 437, 440 (D. Del. 2021), *aff'd*, No. 21-2368, 2021 WL 6550638 (3d Cir. Nov. 18, 2021) (quoting *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir. 2020)). "A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may raise either a facial or a factual challenge." *Danko v. Nat'l R.R. Passenger Corp.*, 234 F. Supp. 3d 655, 657 (E.D. Pa. 2017). "A facial challenge argues that the plaintiff's factual allegations cannot meet the elements of standing." *Thorne*, 980 F.3d at 885 (citing *Schering Plough*, 678 F.3d at 243). "A factual attack contests the sufficiency of jurisdictional facts." *Schiavo*, 548 F. Supp. 3d at 440 (citing *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015)). "In reviewing a factual attack, the court may consider evidence outside the pleadings." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000), *holding modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003) (citing *Gotha v. United States*, 115 F.3d 176, 178–79 (3d Cir. 1997)).

**III. Analysis**

The Corps argues that Plaintiffs cannot establish the causation or redressability elements of standing. [Dkt. 11-1 at 13–14]. "As is often the case, the questions of causation and redressability overlap." *Delta Const. Co. v. E.P.A.*, 783 F.3d 1291, 1296 (D.C. Cir. 2015) (quoting *Massachusetts v. E.P.A.*, 549 U.S. 497, 543 (2007)); *accord Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009) (citations omitted). "The causation element 'requires, at a minimum, that the defendant's purported misconduct was a 'but for' cause of the plaintiff's injury.'" *Fischer v. Governor of New Jersey*, 842 F. App'x 741, 750 (3d Cir.), *cert. denied sub nom. Fischer v. Murphy*, 142 S. Ct. 426, 211 L. Ed. 2d 250 (2021) (quoting *Finkelman v. Nat'l Football League*, 810 F.3d 187, 198 (3d Cir. 2016)). "To show redressability, a plaintiff must show that it is likely, as opposed to merely speculative, that the alleged injury will be redressed by a favorable decision." *Finkelman v. Nat'l Football League*, 877 F.3d 504, 511 (3d Cir. 2017) (citation and quotation omitted). "The difference is that while traceability looks backward (did the defendants cause the harm?), redressability looks forward (will a favorable decision alleviate the harm?)." *Toll Bros.*, 555 F.3d at 142 (citations and quotations omitted).

The Corps raises a factual attack to Plaintiffs' ability to prove the causation and redressability elements of standing, relying on facts and documents outside of the Complaint. According to the Corps, Plaintiffs cannot establish causation or redressability because they must follow the State Order even if Plaintiffs prevail in this lawsuit and eventually succeed in challenging the Corps' jurisdictional determination. [Dkt. 11-1 at 13–14]. The State Order requires Plaintiffs to remove fill and prevents them from dumping contaminated soil on regulated portions of the Property. [*Id.*]. The Corps also points out that Plaintiffs have not named New

Jersey as a defendant in this case to resolve the entire controversy. [Dkt. 11-1 at 14 n.1]. Because the State Order would still restrict Plaintiffs, the Corps asserts that the Settlement Agreement does not exclusively cause Plaintiff's injury and nullifying or amending the Settlement Agreement would not redress Plaintiff's injury. [*Id.*].

     As the Corps argues, Circuit courts nationwide have found that plaintiffs fail to meet the twin causation and redressability elements when a separate, independent cause of the plaintiffs' injury exists that their lawsuit will not remedy. For example, in *Delta Construction Company, Inc. v. E.P.A.*, the D.C. Circuit held that the plaintiff challenging an Environmental Protection Agency regulation failed to show causation and redressability where the plaintiff was subject to a nearly identical regulation adopted by another federal agency. *Delta Const. Co. v. E.P.A.*, 783 F.3d 1291, 1296–97 (D.C. Cir. 2015). The D.C. Circuit also held in *Crete Carrier Corp. v. E.P.A.* that the plaintiffs challenging Clean Air Act regulations could not establish redressability and causation because the plaintiffs were subject to consent decrees that imposed the same requirements as the challenged regulations. 363 F.3d 490, 492–93 (D.C. Cir. 2004). Similarly, the Sixth Circuit found a lack of standing where a plaintiff challenged a federal statute prohibiting cockfighting because all states banned cockfighting to some degree and, therefore, "the plaintiffs' alleged economic injuries due to restrictions on cockfighting are not traceable only to the [federal statute]." *White v. United States*, 601 F.3d 545, 552 (6th Cir. 2010). And the Third Circuit in *Fischer v. Governor of New Jersey* found that teachers challenging a state statute concerning the payment of union dues failed to establish causation and redressability where their union membership agreements imposed more onerous restrictions than the statute. 842 F. App'x at 750. These cases stand for the proposition that plaintiffs lack standing to challenge one law or obligation where another legal obligation imposes the same requirements or limitations on the

plaintiffs' conduct. In the Court's view, this proposition accords with the Third Circuit's holding that the "causation element 'requires, at a minimum, that the defendant's purported misconduct was a 'but for' cause of the plaintiff's injury.'" *Fischer*, 842 F. App'x at 750 (quoting *Finkelman*, 810 F.3d at 198).

Plaintiffs do not dispute this legal proposition but otherwise disagree with the Corps. First, Plaintiffs argue that they necessarily have standing to bring their claims because they are "object[s] of the Government's action." [Dkt. 14 at 13]. This argument is meritless because it only addresses the injury-in-fact standing element and not the causation or redressability elements. *See White*, 601 F.3d at 552 (distinguishing injury-in-fact from causation in redressability in claim seeking to invalidate an Animal Welfare Act provision alleged to have caused financial harm).

Next, Plaintiffs contend that causation and redressability are present because amending the Settlement Agreement will necessarily amend the State Order. According to Plaintiffs, the obligations set forth in the State Order "arise[] only from the incorporation of the non-judicial settlement agreement with the Corps in the State's [Order]." [Dkt. 14 at 11]. The Court disagrees, as nothing in the State Order supports this position. The State order refers only to Plaintiffs' alleged violations of state law and the work necessary to bring Plaintiffs into compliance with state laws. The State Order does not refer to Plaintiffs' violation of or obligations—stipulated or otherwise—under federal law. Rather, the Settlement Agreement refers to and incorporates the Restoration Plan developed pursuant to the State Order. [*See* Dkt. 11-2 at 10–11, Settlement Agreement ¶¶ 13.b, 14]. Moreover, NJDEP issued the State Order approximately nine months *before* Plaintiffs entered the Settlement agreement. At bottom, there

9

is no evidence that the State Order relies on the Settlement Agreement for its authority or substantive requirements.

Plaintiffs further argue that they suffer hardship under the Settlement Agreement independent of the State Order because the Settlement Agreement restricts Plaintiffs' use of the Property more than the State Order. [Dkt. 14 at 14]. Plaintiffs write:

> Under the Corps' analysis of its jurisdiction at the D'Andrea site, all but 1.58 acres are regulated as wetlands pursuant to its authority under the Clean Water Act. Thus, if the Army Corps is correct [regarding its jurisdiction] … only 1.58 acres would be useable uplands. On the other hand, if the plaintiffs are correct and prevail in this matter, the amount of uplands available to them to freely use or develop under the State of New Jersey's jurisdictional determination is 2.91 acres, a significant increase in the plaintiffs' usable property.

[Dkt. 14 at 14]. Plaintiffs claim that this distinction is important because Plaintiffs would be able to dump chlordane contaminated soil on the 1.32 acres of the Property that would be "usable uplands" but for the Corps' jurisdictional claim. The ability to do so would save Plaintiffs the significant cost of transporting the contaminated soil from the Property. [Dkt. 14 at 14–15].

In its reply, the Corps argues that State Order "does not give the D'Andreas more leeway to 'freely use or develop' their property." [Dkt. 15 at 8]. According to the Corps, Plaintiffs improperly equate "usable property" with all property that is not strictly "wetlands," as the State Order also requires Plaintiffs to remediate "wetland transition areas." The Corps claims that the "wetlands" and "wetland transition areas" subject to the State Order are not "usable uplands" as Plaintiffs suggest. [Dkt. 15 at 8–9].

Based on these arguments and the supporting documentation, Plaintiffs have not carried their burden to satisfy the Court that the Settlement Agreement restricts Plaintiffs' use of their land more than the State Order, at least with respect to dumping contaminated soil. The Court

10

agrees with the Corps that Plaintiffs' argument fails to account for "wetland transition areas." New Jersey law regulates activities in wetland transition areas, *see* N.J.A.C. 7.7A-2.3, and the State Order identifies "[t]he performance of unauthorized regulated activities within a freshwater wetland transition area" as a violation. [Dkt. 11-3 at 4–5, State Order ¶ 2]. In other words, even if New Jersey law and the State Order do not regulate Plaintiffs' activities on portions of their Property as wetlands, portions of the Property are regulated as wetland transition areas. Plaintiffs' position overlooks this fact.

This omission calls Plaintiffs' entire argument into question. As noted above, Plaintiffs assert that, but for the Corp's jurisdictional determination, they would have an additional 1.32 acres of "uplands" available for dumping contaminated soil. But the Court is not satisfied that any disparity exists or that this 1.32-acre number is accurate where Plaintiffs have failed to account for wetland transition areas.[1] Plaintiffs do not argue or provide evidence to show that New Jersey law and/or the State Order would permit Plaintiffs to dump contaminated soil on wetland transition areas as they suggest. Further, the Complaint at Count I asks the Court to "dedclar[e] the 2.8 acre portion of the D'Andrea property" identified in the Settlement Agreement to be uplands." [Compl. ¶ 30]. But the State Order identifies unauthorized fill on 2.9 acres of the Property, and requires Plaintiffs to remediate that Portion of the Property. [*See* State Order ¶ 11]. Thus, it is not clear to the Court that there is any material difference between the

---

[1] The Restoration Plan heightens the Court's skepticism. The Restoration Plan demonstrates that the wetland transition areas extend beyond the boundaries of the Corps' jurisdictional claim on some portions of the Property. On other portions of the Property, the Corps' jurisdictional claim exceeds the boundaries of the wetland transition areas. At other points, the boundaries touch or overlap. Plaintiffs' failure to account for wetland transition areas therefore calls Plaintiffs alleged 1.32-acre disparity into question.

Portions of the Property contemplated by the State Order and regulated by state law, and the Portions of the Property contemplated by the Settlement Agreement.

Ultimately, Plaintiffs' failure to account for wetland transition areas undermines the Court's confidence in their claim that the Settlement Agreement—and only the Settlement Agreement—bars Plaintiffs from dumping contaminated soil on portions of the Property that Plaintiffs allege to be "usable uplands," and that a 1.32-acre disparity exists between the amount of land "usable" under the State Order and the Settlement Agreement.  This omission makes it unclear that the Settlement Agreement caused Plaintiffs' alleged injury and that a favorable ruling would remedy their injury.  Plaintiffs have therefore failed to carry their burden to convince the Court that they have standing to bring this lawsuit, and the Court will grant the Corps' motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1).  The Court will, however, dismiss without prejudice and allow Plaintiffs to file an amended complaint.

**IV.    Conclusion**

For the reasons set forth above, the Court will grant the Corps' motion without prejudice and permit Plaintiffs thirty (30) days to file an amended complaint.  An appropriate order will follow.


June 30, 2022                                        /s/ Joseph H. Rodriguez

                                                     Hon. Joseph H. Rodriguez, USDJ