UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ROCCO J. D'ANDREA and HANNELORE D'ANDREA,

    *Plaintiffs*,

v.

U.S. ARMY CORPS OF ENGINEERS AND NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION,

    *Defendants*.

Hon. Joseph H. Rodriguez

Civil No. 21-09569

**OPINION**

Approximately three years after settling putative Clean Water Act violations with the Army Corps of Engineers (the "Corps"), Plaintiffs Rocco and Hannelore D'Andrea ("Plaintiffs") asked the Corps to reconsider certain findings and obligations in the settlement agreement and filed this lawsuit when the Corps refused. The Corps moved to dismiss the case, arguing the Plaintiffs lacked standing and failed to allege a cognizable claim under the Administrative Procedures Act ("APA"). The Court agreed the Plaintiffs lacked standing and granted the Corps' motion but permitted the Plaintiffs thirty days to file an amended complaint.

The Plaintiffs timely filed the amended complaint, adding the New Jersey Department of Environmental Protection ("NJDEP") as a defendant. The Corps and NJDEP have both moved to dismiss the case. The Corps and NJDEP argue the Plaintiffs fail to adequately state a claim. The Corps further argues the Court lacks jurisdiction if the case is dismissed against NJDEP.

**I.  Background**

    **a.  Alleged Clean Water Act Violations and Settlement**

1

To appreciate the facts of this case, some legal background is necessary. The Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 et seq., makes it unlawful for any person to discharge pollutants into "waters of the United States" without a permit. 33 U.S.C. §§ 1311(a), 1362(7), (12), 1342(a), 1344. Waters subject to permit requirements include "territorial waters," "tributaries," and "adjacent wetlands." 33 C.F.R. § 328.3(a)(1), (2), (4). The CWA authorizes the Secretary of the Army through the Corps of Engineers to issue permits for discharges into waters that fall under the CWA's jurisdiction and to enforce permit violations. *See* 33 U.S.C. § 3144(a); *see also* E.P.A. *Federal Enforcement for the Section 404 Program of the Clean Water Act, MEMORANDUM, Between the Department of the Army and the Environmental Protection Agency* (Jan. 1989), https://www.epa.gov/cwa-404/federal-enforcement-section-404-program-clean-water-act. The Corps determines whether the property contains "waters of the United States by issuing jurisdictional determinations on a case-by-case basis." *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 595 (2016). Affected parties generally have sixty days to appeal a jurisdictional determination. 33 C.F.R. §§ 320.1(a)(6), 331.2, 331.6(a).

In 2002, Rocco purchased a 7.98-acre piece of land in Middle Township, New Jersey (the "Property") and transferred ownership of the Property to his wife, Hannelore, in 2004. [Amd. Compl. ¶¶ 3-4; Dkt. 14 at 14]. In 2011, the Property began to attract attention from the New Jersey Department of Environmental Protection. NJDEP evaluated the Property and determined that violations of state environmental regulations occurred on approximately 2.9 acres of the Property due to unauthorized "clearing and filling" of "wetlands," "freshwater wetland transition areas," and "freshwater wetlands." [*See* Dkt. 11-3 at 4–5]. NJDEP sent a first notice of violation to the Plaintiffs concerning these violations on January 6, 2012. [*See* Dkt. 11-3 at 5, State Order

¶ 3]. After the Plaintiffs failed to remediate the violations, NJDEP sent a second notice of violation on June 6, 2014. [*See* Dkt. 11-3 at 5, State Order ¶ 5].

Meanwhile, the Corps commenced its investigation into the Property. In 2014, the Corps inspected the Property and determined fill was discharged into approximately 2.9 acres of the Property between 2011 and 2014. In June 2014, the Corps determined that portions of the Property, including the Northern Portion, contain "wetlands." Therefore, the Corps had jurisdiction under the CWA. [Am. Compl. ¶ 22]. The Corps sent a cease-and-desist letter to the Plaintiffs and later ordered the Plaintiffs to remove the fill because the fill was discharged without a permit. [Am. Compl. ¶ 19]. Plaintiffs deny discharging fill into the wetlands portions of the Property and assert the previous owners of the Property, Imerys Clays, Inc. ("Imerys Clays"), a clay mining company, filled the land due to its operations. [Am. Compl. ¶¶ 6, 20].

In 2016, after concluding that the Plaintiffs failed to resolve the outstanding CWA violations, the Corps referred the case to the United States Attorney's Office. The Corps also provided Plaintiffs with documents to appeal the Corp's jurisdictional determination. [Am. Compl. ¶ 23]. The Plaintiffs did not appeal. [Am. Compl. ¶ 24].

During these investigations, it was discovered that a "substantial portion of the Property had been contaminated with Chlordane," a chemical used as an insecticide until banned in 1988. [Am. Compl. ¶ 27]; *see also* E.P.A., *Chlordane Hazard Summary* (Jan. 2000), https://www.epa.gov/sites/default/files/2016-09/documents/chlordane.pdf. Plaintiffs maintain that they did not dump Chlordane on the Property and suspect that an auto repair shop, Meineke Mufflers, adjacent to the Property is responsible for the contamination. [Am. Compl. ¶ 28].

To avoid potential civil and criminal penalties and formalize a plan for remediating state and federal violations and restoring the Property, the Plaintiffs settled with NJDEP and the

Corps. The Plaintiffs first entered an administrative consent order with NJDEP (the "State Order") on or around October 12, 2016. [Am. Compl. ¶ 26]. The State Order requires Plaintiffs to remove "all unauthorized fill material" from the Property. [Dkt. 11-3 at 6, State Order ¶ 14.a]. It also requires the Plaintiffs to submit a restoration plan (the "Restoration Plan"), which NJDEP reviewed and approved on March 3, 2017. [Dkt. 11-3 at 13, March 3, 2017, Ltr. NJDEP to Steven Morey]. The State Order required Plaintiffs to complete the remediation and restoration within one year. [Dkt. 11-3 at 7, State Order ¶ 17].

Later, on July 18, 2017, the Plaintiffs and the Corps entered a non-judicial settlement agreement (the "Settlement Agreement"). The Settlement Agreement recites the Corp's determination that the Property at issue contained wetlands over which the Corps has jurisdiction. [Dkt. 11-2 at 9, Settlement Agreement ¶ 3]. The Settlement Agreement provides that the Corps would grant Plaintiffs a permit to allow 0.06 acres of fill to remain in wetlands on the Property. [Dkt. 11-2 at 11, Settlement Agreement ¶¶ 13.a, 14]. The Plaintiffs agreed to restore the remaining 2.8 acres of filled wetland as detailed in the Restoration Plan included in the State Order. [Dkt. 11-2 at 10–11, Settlement Agreement ¶ 8, 13].

To date, Plaintiffs have spent more than $400,000 "to comply with the [Settlement Agreement], largely dedicated to the clean-up of the Chlordane contamination." [Am. Compl. ¶ 34]. But Plaintiffs have not completed the remediation or restoration that the State Order or the Settlement Agreement requires.

b. **The Lomax Report, this Lawsuit Commences**

In 2019, approximately two years after entering the Settlement Agreement, the Plaintiffs retained the Lomax Consulting Group, LLC, as environmental consultants. [Am. Compl. ¶ 31]. Joseph Lomax ("Lomax") analyzed the Property and produced a report (the "Lomax Report").

The Lomax Report concluded that the entire regulatory process prompted by enforcement actions by the Corps and NJDEP were based upon a fundamental error about the timing of the filling, which was alleged to have taken place on the Property. [Am. Compl. ¶ 32]. The report also concluded the 2.8-acre portion that was the subject of the Settlement Agreement is "uplands" rather than wetlands. [*See* Lomax Report, at 1, 6-7]. Based on these conclusions, the Plaintiffs believe the Settlement Agreement "was based upon a mutual mistake about the location of wetlands versus uplands." [*See* Am. Compl. Second Count Declaratory Judgment Relief].

The Plaintiffs sent the Lomax Report to the Corps and NJDEP, asking the defendants to modify the non-judicial settlement agreement and the State Order. [Am. Compl. ¶ 32]. Plaintiffs claim that the Corps and NJDEP refused to modify the non-judicial agreement and permit any form of appeal or judicial review of those documents.

Dissatisfied with the Corps and NJDEPs' response, the Plaintiffs filed this lawsuit. The Plaintiffs' amended complaint alleges five counts. Within each count, Plaintiffs conclude with a wherefore clause, indicating a summary of the count. Preceding the wherefore clause in some counts, Plaintiffs make additional allegations.

Count I of the Plaintiffs' Amended Complaint seeks "pre-enforcement review," declaring the Property was filled in due to the operations of Imerys Clays, and further enforcement of any settlement agreement would be inequitable. [Am. Compl. ¶ 37; *see* Am. Compl. First Count Pre-Enforcement Review]. Preceding the wherefore clause in Count I, Plaintiffs make additional allegations. First, the Plaintiffs allege that the Corps and NJDEP acted arbitrarily, reviewable under the Federal Administrative Procedures Act 5 U.S.C. § 706 (2)(A) and the doctrine of pre-enforcement review enunciated by the U.S. Supreme Court in *Sackett v. EPA*, 566 U.S. 120

(2012).[1] [Am Compl. ¶¶ 39, 41]. Secondly, the Plaintiffs allege a denial of their due process rights under the Fifth and Fourteenth Amendment of the United States Constitution because of the failure to allow adequate time to investigate the Corps and NJDEPs' false claims with the refusal to reconsider the inequitable agreements that the Plaintiffs entered under duress and unfounded threats of enforcement. [Am Compl. ¶¶ 38, 40].

Count II seeks a declaratory judgment that the Settlement Agreement is "based upon a mutual mistake of fact" and that the "2.8-acre portion of the D'Andrea property [is] uplands and enjoining the enforcement of that agreement…." [Am. Compl. ¶ 43; see Am. Compl. Second Count Declaratory Judgment].

Count III claims the Corps' actions denied the Plaintiffs' due process rights guaranteed under the Fifth Amendment of the United States Constitution and violated 42 U.S.C. § 1983. The Plaintiffs argue the Corps' actions constitute a taking of the Plaintiffs' Property without just compensation because the regulation under the CWA has denied the Plaintiffs access to their Property and prevented them from depositing clean fill onto the Property. [See Am. Compl. Third Count Versus ACE Civil Rights].

Count IV declares the NJDEP's actions of falsely asserting Plaintiffs filled their Property, threatening the Plaintiffs with civil penalties and criminal proceedings, and the refusal to reevaluate information provided by the Lomax Report denies the Plaintiffs' due process rights under New Jersey's Constitution of 1947 and violates the New Jersey Civil Rights Act. [See Am. Compl. Fourth Count Versus the DEP New Jersey Civil Rights Act]. See generally N.J.S.A. 10:6-1 et seq.

---

[1] Plaintiffs state *Sackett* stands for the proposition the Federal Administrative Procedures Act provides for pre-enforcement review of the actions of all agencies enforcing federal law.

Count V seeks estoppel of any further enforcement of the agreements or reforming agreements, alleging it is inequitable to enforce either agreement between the parties because Plaintiffs have been forced to clean up the Property contaminated by Meineke Mufflers and have been prevented from depositing the clean soil resulting from the remediating on their Property that was not otherwise regulated. [Am. Compl. ¶ 52; *see* Am. Compl. Fifth Count Estoppel-Reformation].

## II. Standard of Review

### a. Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits the dismissal of an action for "lack of subject matter jurisdiction." "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). "The party invoking federal jurisdiction bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter in which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Focus v. Allegheny Cnty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

> To establish constitutional standing, "a plaintiff must show (1) [he] has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). Plaintiffs bear the burden to satisfy the Court that they have standing to bring

their claim. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Parties raising a standing challenge may move to dismiss a case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Schiavo v. Carney*, 548 F. Supp. 3d 437, 440 (D. Del. 2021), *aff'd*, No. 21-2368, 2021 WL 6550638 (3d Cir. Nov. 18, 2021) (quoting *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir. 2020)). The challenge may be either facial or factual. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack contests the sufficiency of the pleadings, whereas a factual attack contests the sufficiency of jurisdictional facts. *Lincoln Ben. Life Co. v. AEI Life, L.L.C.*, 800 F.3d 99, 105 (3d Cir. 2015). When considering a facial standing attack, the court accepts the plaintiff's well-pleaded factual allegations as true and draws all reasonable inferences from those allegations in the plaintiff's favor. *In re Horizon Healthcare Services Inc. Data Breach Litigation*, 846 F.3d 625, 633 (3d Cir. 2017). When reviewing a factual attack, the court may weigh and consider evidence outside the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

      b. **Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. *Id.* In general, only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint are taken into consideration when deciding a motion to dismiss under Rule 12(b)(6). *See Chester County Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007).

Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[2] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." *Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). *Accord Iqbal*, 556 U.S. at 678–80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555

---

[2] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

(internal citations omitted). *See also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 556. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679.

Finally, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal citation and quotation omitted).

### III. Analysis

#### a. The Federal Administrative Procedure Act is Inapplicable to State Agencies

Plaintiffs allege the actions of the NJDEP were arbitrary and capricious final agency actions, which are reviewable under the Federal Administrative Procedure Act ("APA"). Plaintiffs identify 5 U.S.C. § 706(2)(A) for the standard of judicial review of agency actions. Under the APA standard, an administrative agency's action will be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). By its plain language, this provision does not apply to the NJDEP. Section 706 only reaches judicial review of agency actions. Section 701(b)(1) defines "agency" as "each authority of the Government of the United States." 5 U.S.C. § 701(b)(1). Thus, APA "claims may be asserted only against federal agencies and their employees." *Health Sci. Funding, L.L.C. v. N.J.*

*Div. of Hum. Servs.*, No. CV 15-2933, 2015 WL 9308254, at *3 (D.N.J. Dec. 21, 2015), *aff'd sub nom. Health Sci. Funding, L.L.C. v. N.J. Dep't of Health & Hum. Servs.*, 658 F. App'x 139 (3d Cir. 2016) (quoting *Griffith v. Bell-Whitley Cmty. Action Agency*, 614 F.2d 1102, 1105 (6th Cir. 1980)). "The APA does not extend to state agencies." *W. Penn Power Co. v. Train*, 522 F.2d 302, 310 (3d Cir. 1975). The statute, therefore, does not reach NJDEP's conduct in this case since it is a state agency.[3] *See Health Sci. Funding, L.L.C.*, 2015 WL 9308254, at *3 (quoting *Johnson v. Rodriguez*, 943 F.2d 104, 109 n.5 (1st Cir. 1991) ("[The APA] does not purport to affect the review processes of state agencies or commissions").

Plaintiffs argue that the NJDEP's final agency actions are also reviewable under the doctrine of pre-enforcement review stated by the United States Supreme Court in *Sackett v. EPA*, 566 U.S. 120 (2012). Plaintiffs rely on *Sackett*, but the case does not support the proposition that a state agency's final actions are reviewable under pre-enforcement review. *Sackett* provides that an EPA compliance order constitutes a final agency action under the Federal APA. *Sackett v. EPA*, 566 U.S. 120, 131 (2012). Additionally, *Sackett* concerns the Federal APA. As previously addressed, the Federal APA does not extend to state agencies. Plaintiffs provide no support for

---

[3] Moreover, to the extent that the NJDEP is in violation of New Jersey's own administrative procedures act, federal courts do not have the authority to compel state actors to comply with state law. *Johnson v. Guhl*, 166 F. Supp. 2d 42, 52 (D.N.J. 2001), *aff'd*, 357 F.3d 403 (3d Cir. 2004); *see* (*Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment."); *see also Walker v. Mintzes*, 771 F.2d 920, 933 (6th Cir. 1985) ("[A] federal court should not rule upon the validity of a state regulation challenged on the sole ground that it was not properly adopted under state law by the state administrative agency.")

why the decision in *Sackett* should apply to state agencies. Thus, NJDEP's final agency actions are not reviewable under pre-enforcement review.

### b. Plaintiffs Fail to State a Claim for Mutual Mistake of Fact and Duress

Plaintiffs declare the State Order is based on a "mutual mistake of fact" regarding the wetlands status of the Property. The State Order is interpreted under the laws of New Jersey since the agreement states it shall be "government and interpreted under the laws of New Jersey." [Administrative Consent Order at ¶ 41]. The doctrine of mutual mistake applies when a "mistake was mutual in that both parties were laboring under the same misapprehension as to [a] particular, essential fact." *Bonnco Petrol, Inc. v. Epstein*, 560 A.2d 655, 659 (N.J. 1989) (quoting *Beachcomber Coins, Inc. v. Boskett*, 400 A.2d 78 (N.J. Super. Ct. App. Div. 1979)). "As the name implies, the mistake must be mutual; reformation is warranted only when 'both parties were laboring under the same apprehension as to [a] particular, essential fact' and when the mistake has a material effect on the agreed-upon exchange." *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 85 F. Supp. 3d 785, 795 (D.N.J. 2015) (quoting *Bonnco Petrol, Inc.*, 560 A.2d at 659). Mutual mistake is evaluated by determining the understanding of the parties at the time the contract was formed. Restatement (Second) of Contracts § 152(1). There must be "clear and convincing proof" that the original contract expressed the wrong view of the agreement. *Cent. State Bank v. Hudik–Ross Co.*, 396 A.2d 347, 351 (N.J. Super. Ct. App. Div. 1978).

The amended complaint does not contain sufficient facts to establish that there was a mutual misapprehension as to the wetlands status of the Property. NJDEP reviewed the Plaintiffs' Lomax Report and found its conclusions without merit. [*See* NJDEP Response at 2]. The Lomax Report does not show the NJDEP was mistaken to a fact, but instead contests

NJDEP's conclusions reached in the December 15, 2015, LOI. [*See* Lomax Report]. Such disagreements over a technical determination do not constitute a mistake of fact. The amended complaint does not assert sufficient facts to make plausible the inference that there was a mutual mistake of fact at the time of the execution of the State Order.

The Plaintiffs' amended complaint also fails to plead sufficient facts to plausibly support that any mistake of fact pertained to be essential. The State Order did not find the Plaintiffs liable for the fill material. Therefore, acceptance of liability was not essential to the agreement. *See* State Order at ¶ 13 ("The Signatories wish to resolve this matter without further adjudication and therefore have entered into this ACO to settle the violations referenced in the above Findings without admission of fault or liability according to the terms set forth herein."). The State Order was created to restore and replant the unauthorized cleared and filled wetlands and transition areas without the need for further adjudication to determine the Plaintiffs' potential liability. [*See Id.* at ¶ 12]. Therefore, as plead, the facts do not support a reasonable inference of a mutual mistake.

Plaintiffs also allege they entered into the agreement under "[d]uress and unfounded threats of enforcements" due to "threatened enforcement actions including the assessment of civil penalties and criminal prosecutions." [Am. Compl. ¶ 40]. "In determining whether a contracting party is entitled to be absolved from his contractual obligations due to duress, [a] ... court must ... look to the condition of the mind of the person subjected to coercive measures." *Shanley & Fisher, P.C. v. Sisselman*, 521 A.2d 872, 878 (N.J. Super. Ct. App. Div. 1987). "The age, sex, capacity, relation of the parties and all the attendant circumstances must be considered." *Rubenstein v. Rubenstein*, 120 A.2d 11, 13 (N.J. 1956). "In this respect, the test for duress is subjective, rather than objective, and does not turn on whether the duress is of 'such severity as

13

to overcome the will of a person of ordinary firmness.'" *Shanley & Fisher, P.C.*, 521 A.2d at 878-79 (quoting *S.P. Dunham & Co. v. Kudra*, 131 A.2d 306, 309 (N.J. Super. Ct. App. Div. 1957)).

"Under the modern view, acts or threats cannot constitute duress unless they are wrongful; but a threat may be wrongful even though the act threatened is lawful." *Wolf v. Marlton Corp.*, 154 A.2d 625, 630 (N.J. Super. Ct. App. Div. 1959). "The term wrongful in this context encompasses more than criminal or tortious acts, ..., for the conduct may be legal but still oppressive." *Continental Bank of Pa. v. Barclay Riding Academy*, 459 A.2d 1163, 1175 (N.J. 1983) (citation omitted), *cert. denied, sub nom., Barclay Equestrian Center, Inc. v. Continental Bank of Pa.*, 464 U.S. 994 (1983) (citation omitted). "Pressure may be considered wrongful when it is so oppressive under given circumstances as to constrain one to do what his free will would refuse." *Shanley & Fisher, P.C.*, 521 A.2d at 879 (quoting *Rubenstein*, 120 A.2d at 15).

However, threatening to institute legal action where the party has a legal right to take such action does not constitute duress.

> Thus, it is the established rule that it is not duress to institute or threaten to institute civil suits, or take proceedings in court, or for any person to declare that he intends to use the courts wherein to insist upon what he believes to be his legal rights, at least where the threatened action is made in good faith, that is, in the honest belief that a good cause of action exists, and does not involve some actual or threatened abuse of process.

*Great Bay Hotel & Casino, Inc. v. Tose*, No. CIV. A. 91-600, 1991 WL 639131, at *7 (D.N.J. Dec. 16, 1991) (quoting 25 Am.Jur 2d. *Duress and Undue Influence* § 18 at 375–76 (1966)). The NJDEP informing the Plaintiffs of the possible legal consequences of non-compliance is insufficient to justify a claim of duress where they had the legal right to take such action. Further, the Plaintiffs waited over six years since the execution of the State Order to raise a claim

for duress. "When one seeks to avoid a contract on the ground of duress, the person seeking such avoidance should proceed within a reasonable time after the removal of the duress...." *Ballantine v. Stadler*, 132 A. 664, 666 (N.J. 1926). Such passage of time was not reasonable, and if duress motivated the execution of the State Order, Plaintiffs should have raised a claim for duress years ago.

### c. Plaintiffs Fail to State a Claim Under the New Jersey Civil Rights Act

The Plaintiffs' amended complaint alleges the NJDEP has violated their due process rights in violation of the New Jersey Constitution of 1947 and the New Jersey Rights Act, *N.J.S.A.* 10:6-1 *et seq.* [Am. Compl. ¶ 48]. The New Jersey Civil Rights Act is modeled after 42 U.S.C. § 1983; therefore, a similar analysis may be made regarding any claim under the New Jersey Civil Rights Act. *See Armstrong v. Sherman*, No. 09–716, 2010 WL 2483911, *5 (D.N.J. 2010) ("[T]he language of the New Jersey Civil Rights Act, like the language of 42 U.S.C. § 1983, appears to grant a cause of action only to those persons whose rights have been personally violated.").

Plaintiff's Constitutional claims are governed by Title 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). Any analysis of 42 U.S.C. § 1983 should begin with the language of the statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*See* 42 U.S.C. § 1983. As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal

laws. *See Baker v. McCollan*, 443 U.S. 137, 145 n. 3 (1979). By its own words, therefore, Section 1983 "does not ... create substantive rights." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *McCollan*). To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." *Phillips v. County of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (citing *Kneipp v. Teder*, 95 F.3d 1199, 1204 (3d Cir.1996)). Thus, a plaintiff must demonstrate two essential elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that plaintiff was deprived of their rights by a person acting under the color of state law. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 464 (3d Cir.1989). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Supreme Courts holding in *Will* applies to States or governmental entities that are considered "arms of the State." *Id.* at 70.

There are two distinct differences between Section 1983 and the New Jersey Civil Rights Act. First, the New Jersey Civil Rights Act protects against the deprivation of and interference with "*substantive* rights, privileges or immunities secured by the Constitution or laws of this State," *N.J.S.A.* 10:6–2(c) (emphasis added), whereas Section 1983 protects against "the deprivation of *any* rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C.A. § 1983 (emphasis added). Thus, Section 1983 provides remedies for the deprivation of both procedural and substantive rights while *N.J.S.A.* 10:6–2(c) provides remedies only for the violation of substantive rights.

The NJDEP, is a principal department in the Executive Branch of the State Government; therefore, making the agency an "arm of the State." *See* N.J. Stat Ann. § 13:1D-1. Since the New

Jersey Civil Rights Act is modeled after 42 U.S.C. § 1983 and contains a similar analysis, the NJDEP is not a "person" under 42 U.S.C. § 1983 and for the purposes of the New Jersey Civil Rights Act. Plaintiffs therefore cannot present a valid claim against the NJDEP for violations of the New Jersey Civil Rights Act. As such, Plaintiffs also cannot seek relief under the New Jersey Civil Rights Act on procedural due process grounds since the act does not a provide a remedy for procedural due process violations.

### d. Plaintiffs Fail to State a Claim for Declaratory Relief

Federal, not state law applies for declaratory judgment actions. The Federal Declaratory Judgment Act ("DJA") and the New Jersey Declaratory Judgment Act, which are similar, are both procedural, not substantive. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937) ("The operation of the [DJA] is procedural only."). The Federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see also MedImmune, Inc. v. GenenTech, Inc.*, 549 U.S. 102, 128 (2007) (canvassing history of the DJA and its interaction with Article III's case-or-controversy requirement). The DJA does not "provide an independent basis for subject-matter jurisdiction; it merely defines a remedy." *Allen v. DeBello*, 861 F.3d 433, 444 (3d Cir. 2016); *Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 394 (3d Cir. 2016) (noting that the Declaratory Judgment Act "does not itself create an independent basis for federal jurisdiction but instead provides a remedy for controversies otherwise properly within the court's subject-matter jurisdiction). Nor does the DJA create an independent cause of action. *See Wilton v. Seven Falls Company*, 515 U.S. 277, 288 (1995) ("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district courts'

17

quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.").

Plaintiffs' declaratory judgment "cause of action" is not a claim. *See, e.g., In re AZEK Bldg. Prod., Inc., Mktg. & Sales Practices Litig.*, 82 F. Supp. 3d 608, 625 (D.N.J. 2015) (holding that an independent count for declaratory judgment does not create a valid cause of action); *Mazzoccoli v. Merit Mountainside L.L.C.*, No. 12–2168, 2012 WL 6697439, at *9 (D.N.J. Dec. 20, 2012) (dismissing case where the only remaining cause of action was under the Declaratory Judgment Act). Because Plaintiffs have not identified any valid cause of action or basis in law that would allow the court to make a technical determination as to what portion of the Property is upland, the claim fails.

### e. Plaintiffs Lack Standing to Bring this Lawsuit

Because this Court grants NJDEP's motion to dismiss, the Plaintiffs are faced with the same standing problem per this Court's June 30, 2022, Opinion and Order. [*See* Dkt. 16, Opinion]. The Court, therefore, does not need to address the Corps' motion to dismiss, since the Plaintiffs lack standing.

## IV. Conclusion

For the reasons stated above the Defendants' Motions to Dismiss are granted, and Plaintiffs' Amended Complaint is dismissed with prejudice.

An appropriate Order shall issue.

June 20, 2023

_____
Hon. Joseph H. Rodriguez, USDJ